**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATEES OF AMERICA, | Case No. 18-CR-20211-01 |
| Plaintiff, | Hon. George Caram Steeh |
| v. | |
| D-1, MICHAEL DAVIS, | |
| Defendant. | |
| _____/ | |

## DEFENDANT'S SENTENCING MEMORANDUM

### I. Background

NOW COMES the Defendant, Michael Davis, by and through his attorney, John W. Brusstar, and requests that this Honorable Court stay in compliance with United States v. Booker, 543 U.S. 220 (2005), in determining s sentence for Mr. Davis under the factors in 18 U.S.C. § 3553(a). Familiar, too, is the Supreme Court's admonition in Gall v. United States, 522 U.S. 38 (2007), that in applying these factors, a sentencing judge "must make an individualized assessment based on the fact presented" by the case, and without giving presumptive weight to the Sentencing Guidelines.

On **February 7, 2019 at 1:45 P.M.,** Michael Davis, will be sentenced by this Honorable Court for the crimes in Count 1: Criminal Contempt of Court, in violation of 18 U.S.C. § 401(3); and Count 2: Obstruction of Justice, in violation of 18 U.S.C. § 1503. He seeks to have this Court sentence him sufficiently but no greater than

necessary, to fulfill the objectives of sentencing.  United States v. Foreman, 436 F.3d 638, n. 1 (6th Cir. 2006).

From March 6, 2018 through March 8, 2018, Michael Davis refused to testify as a witness in the ongoing trial of *United States v. Billy Arnold, et al* (Docket No. 15-20652).  Specifically, the government intended to elicit testimony about the events of July 14, 2014, where Michael Davis was the *victim* of a shooting.

Information about the enterprise that Mr. Davis was forced to testify against can be gleaned from the Sixth Superseding Indictment in that case.  The Seven Mile Bloods("SMB"), headed by Billy Arnold, a/k/a "B-Man," "Berenzo," "Killa," and Corey Bailey, a/k/a "Sonny,""Cocaine Sonny," is a street gang that operates primarily on the east side of Detroit.  SMB members have claimed this area as their territory and refer to it as the "Red Zone."

The SMB also is affiliated with another gang, "Hobsquad," junior SMBs consisting of younger, school-aged minors from this neighborhood.  SMB and Hobsquad members utilize a variety of unifying marks, manners, and identifiers, including "gang signs," clothing, and tattoos that are specific to the organization.  A common symbol is the five-pointed star, a hand sign with all five fingers, or a crown with five points which represents the fact that the SMB belong to the "People Nation," an alliance of various street gangs including the Bloods, Vice Lords, Latin Kings, and Latin Counts.

This alliance is in direct conflict with the "Folk Nation," an alliance of various street gangs including the Gangster Disciples and the Crips.  The SMB is currently in an active gang war with an alliance of other gangs operating on Detroit's east side

2

including the Hustle Boys, East Warren, Six Mile Chedda Ave., Gutta Boyz, Maxout 220, BossHogs, and Hustle Hard. While rivalries between these gangs has existed for some time, the murder of D.P. on July 14, 2014 by SMB members exacerbated the tension between the gangs and led to the alliance of the other east side gangs against the SMB. Since July 2014, these rivals are violently attacking one another and have posted respective "hit lists" on social media.[1]

SMB members and associates regularly use social networking websites such as Facebook, Instagram, Twitter, and YouTube, to post photographs, videos, and statements that identify and highlight their affiliation with the enterprise, as well as their gang-related accomplishments, thereby glorifying and perpetuating SMB. For instance, on October 2, 2015, SMB defendant Jeffery Adams posted on his Facebook status that a certain SMB enterprise member was a "federal informant." SMB is also heavily involved in the rap music scene. SMB members regularly post videos of their rap music and discuss their gang affiliation and accomplishments via rap. An example is on July 28, 2014, a rap album entitled "Betrayal: Stop Bleekin" was posted on YouTube by SMB defendant Robert Brown, under the name of RO Da Great," with rap songs performed by Brown and SMB defendant Corey Bailey (suspected of being involved in shooting Michael Davis). SMB has a close relationship with "Hard Work Entertainment."

---

[1] It is believed this inspired the internet news article *Death by Instagram*, by Robert Snell, *The Detroit News*. This series of articles detailed how Michael Davis was slated to testify, putting the entire Davis family in grave danger. In fact, the Davis household was shot up during this case, time forcing his mother to move.

The SMB enterprise makes its money predominantly through the sale and distribution of controlled substances, including cocaine, heroin, marijuana, codeine promethazine, and any and all prescription pills.

Some purposes of the SMB enterprise include: 1) maximizing profits for enterprise members from a variety of illegal activity; 2) *preserving and protecting the power, territory, and profits of the enterprise through the use of intimidation and violence, including assaults and threats of violence;* and 3) *keeping victims* (MICHAEL DAVIS) *in fear of the enterprise and in fear of its members and associates through threats of violence.*

On July 14, 2014, in Detroit, Michigan, SMB defendants Billy Arnold, a/k/a "Killa," and Corey Bailey, a/k/a "Cocaine Sonny," shot at a car killing D.P. and Michael Davis was shot in chest but survived.

## II. ARGUMENT

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those factors are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aim of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendant's with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

4

A. **Advisory Guideline Range**

In Rita v. United States, 127 S.Ct. 2456 (2007), the Supreme Court restated the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. § 3553(a). Despite being advisory, rather than mandatory, the Guidelines remain an important factor in fashioning a just sentence.

But the Guidelines are only one of the factors to consider in imposing sentence. Gall v. United States, 128 S.Ct. 586, 602 (2007). The Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence. Kimbrough v. United States, 128 S.Ct. 558, 564 (2007). The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed reasonable.* United States v. Nelson, 129 S.Ct. 890 (2009)(emphasis in original).

B. **Sentencing Factors Pursuant to 18 U.S.C. § 3553**

Once this court arrives at the calculated guideline range for the defendant, which encompasses the base offense level as well as the enhancements, the Court must then consider the factors in § 3553, as discussed above, in exercising its post-*Booker* discretion. The goal of this provision is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in ¶ (2) of this subsection." 18 U.S.C. § 3553(a). The purposes of sentencing as set forth in § 3553(a)(2) are:

"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

5

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or the correctional treatment in the most effective manner."

### C. **Analysis of § 3553 Factors**

An analysis of the sentencing factors pursuant to 18 U.S.C. § 3553 indicates that Mr. Davis merits a substantial reduction below his guideline range.

Mr. Davis has been incarcerated since July 24, 2015 since he was charged with Felon in Possession of a Firearm in the United States District Court for the Eastern District of Michigan. On January 15, 2016, he entered a plea and on June 30, 2016, the Honorable Stephen J. Murphy sentenced him to 36 months custody. Mr. Davis' out-date from the BOP is on or about February 5, 2019. One factor this Honorable Court must consider is that Mr. Davis' entire Felon in Possession sentence was served in various county jails, without the benefits of better settings and programs offered by the BOP.

Mr. Davis did not want to disobey this Honorable Court's order to testify, but when his mother's house was shot up and the Detroit News internet website story, *Death by Instagram,* by Robert Snell was published, he felt he had no choice. He could not put his own flesh and blood at risk. The PSIR indicates that the people Mr. Davis was to testify against that shot him in the chest – remember who the victim is here – are "some of the most dangerous individuals in Detroit." (¶ 86). As mentioned above, SMB members and associates regularly use social networking websites. He could not do it even though he tended to his best friend D.P. who was

shot in the head and killed. The government avers in their SMB charges that one of the purposes of the SMB Enterprise is "keeping victims in fear of the enterprise and in fear of its members and associates through threats of violence." (Sixth Superseding Indictment, p. 7). His fear is real to this day.

Any harm to the government in Mr. Davis not testifying was rendered moot on August 28, 2018, when a jury found Corey Bailey guilty with respect to the murder of D.P., along with all or most other charges. Again, Mr. Davis felt he had no other choice.

Mr. Davis admits to a drug problem (see ¶¶53-54 of the PSIR), and asks this Honorable Court for the 500-hour Comprehensive Residential Drug Abuse Program (RDAP) provided by the Federal Bureau of Prisons (BOP). Indeed, the RDAP is one of the few mechanisms by which federal inmates can now potentially receive a reduction in their sentence beyond earning good conduct credit.

### III.  Conclusion

WHEREFORE, Defendant Davis asks this Honorable Court to take into account that *he* was the victim in this case, shot by members of a violent street gang, the SMBs.  Any reasonable person would have justifiable fear in testifying in court and putting his family at further risk of harm.  Further, the government secured conviction of Corey Bailey of the murder of D.P. even without the testimony of Mr. Davis.  For these reasons, Mr. Davis is asking this Honorable Court to sentence him far below the contemplated advisory guidelines to **one year.**

Further, as to Mr. Davis' BOP placement, he asks that this Honorable Court recommend Milan Prison in Michigan so that he can be near his family.

Respectfully submitted,

*s/     John W. Brusstar*   (P36920)
**John W. Brusstar**
Attorney for Defendant
Ford Building
615 Griswold, Suite 1125
Detroit, Michigan 48226
(313) 268-6888
johnbrusstar@yahoo.com

Dated:  February 4, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification of such filing to the following:

    Assistant U.S. Attorneys: Eric Straus

              William M. Sloan

              Rajesh Prasad

            Respectfully submitted,

            *s/ John W. Brusstar* (P36920)
            **John W. Brusstar**
            Attorney for Defendant
            615 Griswold, Suite 1125
            Detroit, Michigan 48226
            (313) 268-6888
            johnbrusstar@yahoo.com