UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MICHAEL DAVIS,

    Defendant.
_____/

Case No. 18-20211

HON. GEORGE CARAM STEEH

ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE OR RECOMMENDATION
FOR HOME CONFINEMENT [ECF No. 24]

Defendant Michael Davis moves the Court for compassionate release due to dangers posed by COVID-19, or alternatively for a recommendation to the Bureau of Prisons for home confinement. For the reasons set forth below, Defendant's motion is DENIED.

I.    Factual Background

Defendant Michael Davis pled guilty to Criminal Contempt of Court and Obstruction of Justice for repeatedly refusing to testify, despite being immunized, regarding a gang-related shooting that took the life of his friend and left him with a gunshot wound in his chest. At the time of that offense conduct, Davis was already serving a Bureau of Prisons (BOP) sentence

for Felon in Possession of a Firearm, for which officers arrested him while he was on parole for Armed Robbery.  The Court sentenced Defendant to 70 months on contempt and obstruction counts to be served concurrently. The Court also ordered that the sentence run concurrently with any time remaining on Defendant's sentence for felon in possession of a firearm. Defendant began serving his current sentence on February 7, 2019.  He is now 15 months into the 70-month sentence.

     Defendant is a member of Hustle Boyz, an eastside Detroit gang, and has a significant criminal record that started as a juvenile.  While on Juvenile supervision, Defendant and three others robbed and carjacked the victim because they lost money to him while gambling.  Defendant pled guilty to Armed Robbery and was sentenced to a term of 4 to 20 years with the Michigan Department of Corrections (MDOC).  While serving his sentence, Defendant continued his defiant and violent behavior.  The MDOC found Defendant guilty of more than ten misconducts, including multiple assault charges which resulted in a misdemeanor conviction for Aggravated Assault with a consecutive one-year incarceration.

     On July 23, 2015, while Defendant was on parole for the prison assault conviction, he was arrested for possessing a .45 caliber Springfield handgun in a vehicle.  On January 15, 2016, he pleaded guilty to Felon in

Possession of a Firearm and was sentenced to 36 months of imprisonment. Also while on parole, Defendant was a witness to, and a victim of, a gang-related shooting. On July 14, 2014, Defendant encountered Billy Arnold, a member of the rival Seven Mile Bloods (SMB) gang, while Defendant and Arnold were at the Lawton parole office in Detroit. A car chase between the rival gang members ensured and Defendant was shot in the chest. Defendant's friend, Djuan Page, died after being shot in the eye and upper torso.

In March 2018, the government called Defendant as a witness to testify about Page's murder in a RICO conspiracy trial of four SMB members. On March 6 and again on March 8, Defendant refused to testify about his friend's murder despite being granted statutory immunity and despite the Court's order to testify.

During his current incarceration, on October 15, 2019, the BOP found Defendant in possession of a hazardous tool. Defendant accepted responsibility on November 1, 2019 and was disciplined. (SEALED Exhibit A: BOP Discipline Data, 05-04-2020, 2). As a result, on November 18, 2019, the BOP determined that Defendant was at a "High Risk Recidivism Level" under their First Step Act analysis. (SEALED Exhibit B: BOP Inmate History, 05-04-2020, 2). Davis is currently incarcerated at Beaumont

Medium FCI, in Beaumont, Texas. He is 29 years old, and his projected release date is October 19, 2023.

Defendant bases his motion for compassionate release on the fact that he suffers from severe asthma. The government disputes this by pointing out that the only underlying medical conditions that are documented in his Presentence Investigation Report (PSIR) and BOP medical records, other than a temporary dental matter, are chronic dermatitis and a follicular disorder, both unspecified, for which he has been regularly prescribed steroid medications.

Defendant also claims that he attempted to petition the Warden at FCI Beaumont for compassionate release. However, the BOP has confirmed that Defendant has not submitted a request for a reduction in sentence. Defendant avers that exhaustion is futile and the requirement should be waived in this case because of the current chaos in the BOP due to the pandemic as well as due to the immediate danger posed by COVID-19.

Finally, defendant contends that he is a good candidate for compassionate release to home confinement because he was convicted of a non-violent offense, has a good prison record, and has a stable home environment available to him. Alternatively, if compassionate release is

denied, Defendant seeks to have the Court recommend that the BOP release him to home confinement under 18 U.S.C. § 3624(C).

The BOP has been directed by the Attorney General to assess its entire prison population to determine which inmates face the most risk from COVID-19, pose the least danger to public safety, and can safely be granted home confinement. 03-26-2020 Directive to BOP; 04-03-2020 Directive to BOP. This process necessarily requires the BOP to identify the best candidates for release, ensure that their homes are suitable for home confinement, and arrange a way to quarantine each of them for 14 days. As of May 28, 2020, these directives have already resulted in at least 3,311 inmates being placed on home confinement. See BOP COVID-19 Website.

II. Legal Standard

This Court's authority to grant Defendant's request for compassionate release is governed by 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. This section allows for judicial modification of an imposed term of imprisonment when three criteria have been met: (1) the defendant has first exhausted all administrative remedies with the BOP or at least allowed the BOP 30 days to act on his request before seeking compassionate release on their own motion; (2)

extraordinary and compelling reasons warrant such a reduction; and (3) the reduction is consistent with the applicable policy statements issued by the Sentencing Commission and the court has considered the factors set forth in section 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

An "extraordinary and compelling reason" for the reduction can be satisfied in cases where a defendant's medical conditions or overall state of health are such that they cannot be treated effectively or will worsen in a custodial environment. To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

Before granting a motion for compassionate release, the Court must review the § 3553(a) factors to the extent that they are applicable and determine whether they support or undermine the sentence reduction.

III. Analysis

    A. Exhaustion of Administrative Remedies

Until recently, only the BOP could move for compassionate release. The First Step Act of 2018 amended the statute, permitting defendants to move for compassionate release themselves. First Step Act § 603(b), Pub.

L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018). The provision permitting a defendant-initiated motion includes an exhaustion requirement. *Id.* If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the BOP or waiting 30 days from when the warden at the facility received the request. 18 U.S.C. § 3582(c)(1)(A).

Courts, including those in this district, are split on whether the exhaustion requirement is waivable in the midst of the current pandemic. *Compare United States v. Alam*, No. 15-20351, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020) (Cox, J.) (exhaustion is required) *with United States v. Saad*, No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020) (Hood, C.J.) (exhaustion may be excused). This Court finds the analysis undertaken in *United States v. Haney*, No. 19-CR-541, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) to be persuasive. That court examined the statutory language which gives a defendant the choice of either exhausting administrative remedies or waiting 30 days after serving his petition on the warden before filing a motion in court. With the second option, the statute allows a defendant to come to court before the agency has rendered a final decision. This demonstrates that Congress was less concerned with

protecting administrative agency authority and intended that defendants have the right to a meaningful and prompt judicial determination. Therefore, the *Haney* court concluded "that Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in the highly unusual situation in which the nation finds itself today." *Id.* at *3 (*quoting United States v. Russo*, No. 16-cr-441, 2020 WL 1862294 (S.D.N.Y. Apr. 3, 2020)); a*ccord United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *3 (E.D. Mich. Apr. 20, 2020) (Michelson, J.); *United States v. Demetrious Flenory*, No. 05-80955, 2020 WL 2124618, at *4-5 (E.D. Mich. May 5, 2020) (Lawson, J.).

In this case, where Defendant did not submit a request to the warden for compassionate release, he asks the Court to waive this requirement, claiming that "[t]here has been an outbreak of the COVID-19 virus throughout the prison," and "it is impossible to . . . petition to the Warden because neither the Warden or Assistant Warden have not been available to address [his] concern since the outbreak of the virus." (Doc. 24, PageID 124). As of May 28, 2020, however, zero inmates and only three staff have tested positive for Covid-19 at FCI Beaumont - Medium since the start of the pandemic—hardly the "outbreak" Davis describes. See BOP COVID-19 Website.

There is an undeniable value in having the BOP make the initial review before an inmate is released. The BOP is already responding to the pandemic—not just through heightened safety measures, but by evaluating its entire prison population for home confinement. By requiring a defendant to exhaust, § 3582(c)(1)(A) gives the BOP the opportunity to gather an inmate's medical documentation and other records, evaluate the request, and decide in the first instance whether it justifies seeking compassionate release or pursuing some other form of relief. Still, the Court believes that § 3582(c)(1)(A)'s exhaustion requirement is waivable in certain instances, particularly where a defendant cannot feasibly exhaust their administrative remedies without the potential for serious health consequences.

In this case the Court need not determine whether the exhaustion requirement should be waived because it is clear that Defendant does not meet the other criteria.

    B.    <u>Extraordinary and Compelling Reason</u>

There must be an extraordinary and compelling reason for the Court to modify Defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Compassionate release is narrowly limited to those defendants who are most in need per USSG § 1B1.13. That policy statement limits

"extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the BOP has set forth in Program Statement 5050.50.  USSG § 1B1.13 cmt. n.1.

Defendant asserts that he "was diagnosed with severe asthma when he was younger and requires medication and treatment for his condition," and further that "[h]is serious asthma condition is documented in his BOP inmate file."  (Doc. 24, PageID 123, 127)  However, a review of the PSIR for Defendant's felon in possession case (Case No. 15-cr -20486), the PSIR for the instant case, and his medical records provided by the BOP for 2019 and 2020 contains no indication that Defendant has claimed, been diagnosed with, or been treated for asthma, much less "severe" asthma. The only medical conditions that do appear in those records, a temporary dental issue, chronic dermatitis and a follicular disorder, do not meet the standard for a "serious medical condition."

Furthermore, there are currently no positive COVID-19 tests among the approximately 1,559 inmates housed at FCI Beaumont Medium, there are only three positive cases among the staff there, and officials at that facility, as at all BOP facilities, have instituted a number of precautionary

measures to reduce the risk of infection, including restrictions on prisoner movement. Defendant's concern that he may contract COVID-19 in the future is speculative. Based on his young age and lack of any comorbidity, currently available information does not indicate that Defendant is at any higher risk of severe illness from COVID-19 than other individuals.

Finally, § 1B1.13(2) only permits release if a defendant is "not a danger to the safety of any other person or to the community." As outlined above, Defendant's criminal history does not support such a conclusion. Defendant has a long history of violent crimes and firearm offenses. His continued violations while incarcerated, even as recently as last October, show his continued defiance of lawful authority.

### C. 18 U.S.C. § 3553(a) Factors

In Defendant's case, the § 3553(a) factors, including his history and characteristics, seriousness of the offense, promoting respect for the law, and providing just punishment weigh in favor of denying his request for compassionate release. At Defendant's February 7, 2019 sentencing hearing, the Court looked at the aggravating factor of his violent criminal history, mitigated by his family support. The Court emphasized the need to generally deter witnesses of violent crimes from refusing to comply with court orders to testify, while at the same time recognizing the fear of

retaliation that might come with testifying. The Court then sentenced Defendant to 70 months, which was 50 months below the advisory guideline range. Defendant has served less than 25 percent of his sentence and is approximately 40 months from his release date.

Defendant is a young man who lacks any particular vulnerability to COVID-19. That, together with his criminal history and the length of time remaining on his sentence, leads the Court to conclude that Defendant is not a proper candidate to be granted the extraordinary relief of compassionate release.

### D. Recommendation for Home Confinement

Defendant alternatively asks the Court to recommend to the BOP that he be permitted to finish his sentence under home confinement. Pursuant to the two recent directives from the Attorney General, the BOP is assessing its entire prison population to determine which inmates face the most risk from COVID-19, pose the least danger to public safety, and can safely be granted home confinement. The BOP is in the best position to undertake this analysis and the Court is not inclined to make a recommendation as to Defendant's placement.

For the reasons outlined above, Defendant's motion for compassionate release or recommendation for home confinement is DENIED.

Dated: May 28, 2020

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 28, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk